FILED
CLERK

9/11/2015 11:07 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS M. JAECKEL,

                      Plaintiff,

      -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                   Defendant.
------------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**

13-CV-4270 (SJF)

       Thomas M. Jaeckel ("plaintiff" or "claimant" or "Jaeckel") commenced this action

pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final determination of defendant

Commissioner of Social Security Administration ("Commissioner" or "defendant") which denied

his application for disability benefits.  Now before the Court is defendant's motion for judgment

on the pleadings [Docket Entry No. 12 ("Defendant's Motion")] and plaintiff's motion to strike

and for judgment on the pleadings. [Docket Entry No. 9 ("Plaintiff's Motion")].  For the reasons

that follow, Defendant's Motion is DENIED and Plaintiff's Motion is GRANTED IN PART and

the matter is remanded for further proceedings.

I.      BACKGROUND

      A.      Administrative Proceedings

      On May 11, 2011, plaintiff, a former electrician, filed an application for disability

insurance benefits alleging disability since September 4, 2010 due to psoriatic arthritis and

traumatic facial and right hand wounds.  [Docket Entry No. 15 Transcript of Administrative

Record ("Tr.") 65, 161].  On September 16, 2011, the Social Security Administration ("SSA")

denied plaintiff's application.  *Id*. at 70-77.  Pursuant to plaintiff's request, a hearing was held on

July 12, 2012 before Administrative Law Judge Seymour Rayner ("ALJ"), at which plaintiff appeared with his attorney and testified. *Id*. at 37-64.

On August 2, 2012, the ALJ issued a decision ("ALJ Decision") finding that plaintiff was not disabled from September 4, 2010 through the date of the decision. *Id*. at 8-24. The ALJ found that: (1) claimant last met the insured status requirements of the Social Security Act through December 31, 2015; (2) claimant had not engaged in substantial gainful activity since September 4, 2010, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*); (3) claimant had the following severe impairments: status post gunshot wound to the face, residual effects of traumatic brain injury, psoriatic arthritis, heart palpitations, headaches, vertigo, Tinnitus, decreased visual acuity of the right eye, a depressive disorder, borderline clinical anxiety, and an adjustment disorder with mixed anxiety and depressed mood (20 C.F.R. § 404.1520(c)); (4) claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526); (5) claimant had the residual functional capacity to perform a wide range of light work including lifting or carrying ten (10) pounds frequently and twenty (20) pounds occasionally and sitting, standing, or walking up to six (6) hours in an eight (8) hour work day, but was restricted to occupations that entail simple tasks and do not require exposure to unprotected heights, operation of heavy machinery, and fine visual acuity in the right eye (20 C.F.R. § 404.1567(b) and 85-15)); (6) claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565); (7) claimant was forty-eight (48) years old, which is defined as a younger individual (age eighteen (18) – forty-nine (49)) on the alleged disability onset date (20 C.F.R. § 404.1563); (8) claimant had at least a high school education and was able to communicate in English (20 C.F.R. § 404.1564); (9) applying the Medical-Vocational Rules

directly supported a finding of "not disabled" whether or not claimant had transferable job skills (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2); (10) considering claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could perform (20 C.F.R. §§ 404.1569 and 4040.1569(a)); (11) claimant was not under a disability, as defined in the Social Security Act from September 4, 2010 through the date of the decision. *Id.* at 11-20. The ALJ Decision became the final decision of the Commissioner on May 31, 2013, when the Appeals Council denied plaintiff's request for review. *Id.* at 1-4.

B.    Non-Medical Evidence[1]

Plaintiff was born on August 27, 1962 and was forty-eight years (48) years old on the alleged onset date. Tr. 40, 158. Plaintiff graduated from high school in 1981 (*id.* at 162) and did not have any higher level of education, but completed specialized job training in electrical local 25. *Id.* Plaintiff worked in electrical construction from October 1997 to September 2010, as a union commercial industrial electrician and running his own electrical contracting business. *Id.* at 40, 162. According to plaintiff, these jobs entailed lifting, climbing, pulling, and digging (*id.* at 40) in addition to walking, standing, stooping, kneeling, crouching, crawling, carrying, handling large objects, writing, typing or handling small objects, reaching, and use of machines, tools, equipment and technical knowledge or skills, and frequently lifting between forty (40) and sixty (60) pounds. *Id.* at 41, 163.

Plaintiff testified that he was unable to work due to injuries sustained on September 4, 2010 when, while on a shooting range, his rifle malfunctioned, exploded, and discharged debris which embedded in and caused significant injuries to his head, face and right eye. *Id.* at 41-44.

---

[1]    *See* Tr. 208-560 for a full overview of the medical evidence.

Plaintiff testified that he had one surgery to remove the items lodged into his head and another surgery for reconstruction. *Id*. at 42. Plaintiff testified that the reconstruction surgery was not able to restore his eyesight and that his eyesight was now significantly less on his right side, his right pupil had nerve damage and did not constrict or dilate, and his right eyeball did not move as fast as his left which upset his equilibrium. *Id*. at 44. Plaintiff testified that he had double vision, dizziness, at times with nausea, problems with his depth perception, and a lack of feeling on the right side of his face. *Id*. Since the accident, plaintiff got dizzy quite often, had headaches all the time and ringing in his ears, his hands shook, his back, hands, and feet hurt, he experienced stiffness in the morning, and the medication he took at night made him groggy in the morning. *Id.* at 46-47. Plaintiff did not wear a back brace or a wrist collar or brace (*id.* at 62), did not have any injections in his wrist, back or neck but did have injections for heel spurs in his feet though he now used orthotics instead of taking injections, which he testified helped. *Id.* at 62-63. He thought his medication was helping. *Id*. at 62.

Plaintiff testified that he made breakfast and dinner, put his dogs outside, and did some house cleaning. *Id*. at 47. Plaintiff's impairments affected his memory and he had notes around the house to remind him to take his medication. *Id*. at 48-49. Plaintiff had difficulty using a computer because his hands shook, typing hurt his fingers, his thumb didn't "work right," and he did not see well, even with his glasses, so he needed bold print on the computer. *Id*. at 51. Plaintiff testified that he could stand in one place and walk for about twenty (20) minutes before needing to shift (*id.*), that he could open an envelope (*id*. at 58), shave, shower, dress and buckle a buckle by himself (*id.* at 53), that he buttoned his shirt buttons most, but not all of the time (*id*. at 54), that he had difficulty using a zipper (*id*.), and that he could not tie a bow or do laundry. *Id*. at 55. He could shop for a small amount of food, pull a T-shirt over his head, make his bed,

sweep the kitchen but only for a short period of time because it caused him back pain (*id*. at 55-56), wash dishes at the sink for about fifteen (15) minutes (*id*. at 57-58), vacuum a little bit (*id*. at 59), take out the garbage if it was not too heavy (*id*.), climb the two (2) stairs at the front and back of his house (*id*. at 60), open the doors to his house and car (*id*.), eat with a knife and fork (*id*.), hold a cup of coffee in his hand (*id*.), take a pair of socks out of his drawer (*id*.), take a pair of pants out of the closet (*id*.), squeeze toothpaste onto a brush (*id*. at 62), and open a can with a can opener. *Id*. Plaintiff testified that he did not visit his friends but visited his relatives (*id*. at 56), went to the movies with his wife (*id*. at 60), and ate at restaurants with family and friends. *Id*. at 60-61. However, he also reported that he spent most of his day at home resting, did not socialize with friends or family and was self-conscious and depressed with repetitive thoughts. *Id*. at 345, 350. Plaintiff testified that he could sit for thirty (30) minutes at one time and lift five (5) to ten (10) pounds. *Id*. at 63. Plaintiff had just taken up the hobby of model boat building. *Id*. at 61.

Plaintiff's function report (*id*. at 340-50) indicated that his daily activities included cooking, cleaning the kitchen, performing mild house duties, taking care of his two children, taking them to sports activities, religious education, and caring for their daily needs, and taking care of his two dogs. *Id*. at 341. Plaintiff reported that prior to his injuries, he worked two (2) jobs and handled household maintenance, but that he now had constant pain, couldn't stay focused, was tired and weak, and experienced vertigo and headaches. *Id*. Plaintiff's function report stated he had no problems with his personal care (*id*.) though he needed notes and reminders to take his medicine. *Id*. at 342. Plaintiff could prepare some packaged and non-packaged meals (*id*.) and perform some minor yard/household work but bending over caused dizziness, headaches, and back pains. *Id*. at 343. Plaintiff reported being able to go out alone,

which he did daily, walk, drive a car,[2] shop in stores and by a computer, count change, and handle a savings account (*id*. at 343-44), and that his hobbies had included reading, watching television, video games, cooking, trap shooting, snow mobiling and bike riding but he was no longer able to do the last three activities due to his impairments. *Id*. at 344-45. He reported difficulty lifting, standing, sitting for long periods or on hard seats, kneeling, squatting, using his hands, seeing, and hearing, but no problems walking, climbing stairs, reaching, or talking. *Id*. at 345-46. Plaintiff reported that he could walk for thirty (30) minutes before stopping to rest for five (5) minutes; that he had difficulty paying attention; and that he could finish what he started, although slowly. *Id*. at 347. He could follow written and spoken instructions if he could concentrate and focus, had no problem getting along with authority figures, and had never lost a job because of problems getting along with people. *Id*. Plaintiff reported becoming overwhelmed with stress and having difficulty remembering things (*id*. at 348), and that stress and his activities of daily living caused radiating pain in his feet, hands, back, neck, face, and head that was stiff, pounding, stabbing, dull, and achy and could last from a brief period up to the whole day. *Id*. at 348-49. He was taking Humira and hydrocodone and had no side effects from the medication. *Id*. at 349-50.

II.     DISCUSSION

    A.     Standards of Review

        1.     Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to

---

[2]      Plaintiff testified that while he could drive a car, he did not like to do so frequently due to problems with his depth perception which made it difficult for him to judge where to stop. Tr. 49-50.

a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

      2.      Review of Determinations by the Commissioner of Social Security

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision…with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009)). "[I]t is not the function of the reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law might have affected the disposition of the case." *Id.* at 189. If so, the Commissioner's decision must be reversed. *Id.*; *see also Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).

B.      Evaluation of Disability Under the Social Security Act

Pursuant to 42 U.S.C. § 423(d)(1)(A), the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated under the Act, the Commissioner is required to apply a five (5) step sequential analysis to determine whether an individual is disabled. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the

next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). When a claimant's impairments fail to meet or equal any of the Listings, the Commissioner must assess the claimant's residual functional capacity ("RFC") before proceeding to the fourth and fifth steps of the sequential analysis. 20 C.F.R. §§ 404.1520(e); 404.1545(a)(5). The Commissioner's RFC assessment must be based on "all of the relevant medical and other evidence" in the case record, including "any statements about what [the claimant] can still do that have been provided by medical sources" and any "descriptions and observations of [the claimant's] limitations from [his or her] impairments, including limitations resulting from [his or her symptoms], such as pain, provided by [the claimant] or [other persons]." 20 C.F.R. § 404.1545(a)(3). In addition, the Commissioner must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Both a "limited ability to perform certain physical demands or work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)" (20 C.F.R. § 404.1545(b)), and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to

supervision, coworkers, and work pressures in a work setting" (20 C.F.R. §404.1545(c)), may

reduce a claimant's ability to do past or other work. 20 C.F.R. § 404.1545(e) provides that:

> [w]hen [a claimant] ha[s] severe impairment(s), but [his or her] symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in [the Listings], [the Commissioner] will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [his or her] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone…In assessing the total limiting effects of [a claimant's] impairment(s) and any related symptoms, [the Commissioner] will consider all of the medical and nonmedical evidence…

20 C.F.R. § 404.1545(e). The RFC considers whether "[the claimant's] impairment(s), and any

related symptoms, such as pain, may cause physical and mental limitations that affect what [the

claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the

claimant] can still do despite [his or her] limitations." *Id*.

At the fourth step, the Commissioner compares the RFC assessment "with the physical

and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(a)(1)(iv) and

(f). If the claimant can still do his or her past relevant work, the claimant is not disabled. 20

C.F.R. § 404.1520(a)(1)(iv). If the claimant cannot do his or her past relevant work, the

Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's]

age, education and work experience to see if [the claimant] can make an adjustment to other

work." 20 C.F.R. § 404.1520(a)(1)(v). If the claimant can make an adjustment to other work,

the claimant is not disabled. *Id*. If the claimant cannot make an adjustment to other work, the

claimant is disabled. *Id*. The claimant bears the burden of proving first four (4) steps of the

sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera*, 697 F.3d at 151.

C.      Plaintiff's Motion to Strike

Plaintiff moves to strike defendant's answer because "[d]efendant filed an untimely Answer dated November 27, 2013" [Docket Entry No. 9 ("Pl. Mem."), at 6], and because "as of the date of [plaintiff's motion], defendant ha[d] failed to file her Motion for Judgment on the Pleadings Affirming the Commissioner's decision. *Id.* First, the Court notes that as of the March 13, 2014, the date Plaintiff's Motion was filed, defendant had not yet *filed* its Motion with the Court, but had, in accordance with this Court's Scheduling Order [Docket Entry Nos. 4, 8] and its individual rules, timely *served* its Motion on plaintiff [Docket Entry No. 10, at 3-4] and was waiting for the Motion to be fully briefed before filing it with the Court. Therefore, the Court declines to strike defendant's Answer based upon this ground. Second, while defendant's answer was untimely filed [Docket Entry No. 6], plaintiff has failed to demonstrate he was prejudiced by this two (2) week delay in the filing of defendant's answer and in fact, plaintiff failed to object to the untimeliness of the answer at the time and subsequently consented to defendant's request for an extension of the briefing schedule [Docket Entry No. 7], which the Court approved on January 10, 2014. [Docket Entry No. 8]. Given that the parties have both filed motions for judgment on the pleadings and given the preference in this Circuit "that litigation disputes be resolved on the merits, not by default" (*Azikiwe v. Nigeria Airways Ltd.*, No. 03-civ-6387, 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006) (citing *Marfia v. T.C. Zirant Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996) (citing *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)))), plaintiff's motion to strike defendant's answer is denied.

D.    Alleged Errors in the ALJ Decision

Plaintiff contends that: (1) the ALJ failed to follow the treating physician rule (Pl. Mem., at 11-13); (2) the ALJ failed to give plaintiff a presumption of credibility as required by law and erred in assessing his credibility (*id*. at 13-15); and (3) the ALJ failed to provide a proper analysis at step 5. *Id.* at 15-18.

1.    Treating Physician Rule

Social Security Regulations provide that a treating physician's opinion on the nature and severity of a claimant's symptoms is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  The rule "governs the weight to be accorded the medical opinion of the physician who treated the claimant...relative to other medical evidence before the fact-finder, including opinions of other physicians."  *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986). "The regulations also require the ALJ to set forth her reasons for the weight she assigns to the treating physician's opinion."  *Shaw*, 221 F.3d at 134.  However, "the opinion of the treating physician is not afforded controlling weight where...the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may

constitute such evidence.") (internal citations omitted); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [it] will [be] give[n]…"). "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve" (*Burgess v. Astrue*, 537 F.3d 117, 128 (2d. Cir. 2008) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002))), and the "ultimate finding of whether a claimant is disabled and cannot work" is "reserved to the Commissioner." *Schnetzler v. Astrue*, 533 F. Supp. 2d 272, 287-88 (E.D.N.Y. 2008). An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider the following factors to determine how much weight to give the opinion: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. *See Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c).

Plaintiff alleges that the ALJ erred in failing to give significant weight to the opinions of Dr. Devlin, Dr. Negron, and Dr. Manaris – plaintiff's treating sources. Pl. Mem., at 11-12. First, the ALJ did not violate the treating physician rule when he accorded "[l]ittle weight…to the opinions of treating physician Michael Negron, D.O., that the claimant has been totally disabled since September 4, 2010…and of Anastasios Manaris, D.O., an examining physician, that the claimant is disabled" (Tr. 18) because an opinion that a claimant is "disabled" is "not considered a 'medical opinion' under the treating physician's rule to which controlling weight should be assigned because it represents an opinion on an issue reserved to the Commissioner." *Earl-Buck v. Barnhart*, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006); *see also Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003); 20 C.F.R. § 404.1527(d).

However, the ALJ's accordance of "[l]ittle weight…to the opinion of Shiman Devlin, M.D., a treating psychiatrist, that the claimant has moderate to marked limitations in understanding and memory, sustained concentration and persistence, social interactions, and adaption, cannot tolerate even low stress, and would miss work more than three times month" because it was "not supported by any treatment notes and [was] inconsistent with the claimant's admitted activities, mental status examinations, and the opinions of Drs. Bolton and Herman" (Tr. 18) contained legal error.  "Where, as here, the ALJ elects not to give a treating physician's opinion controlling weight, the Second Circuit has stated that the ALJ 'must consider' the factors articulated in 20 C.F.R. § 404.1527(c)(2)."  *Hill v. Astrue*, No. 1:11-civ-0505, 2013 WL 5472036, at *11 (W.D.N.Y. Sept. 30, 2013) (citing *Burgess*, 537 F.3d at 129).  While the ALJ correctly noted that there was evidence in the record that contradicted some of Dr. Devlin's findings,[3] "the ALJ failed to follow the administrative methodology mandated by the SSA regulations in rejecting [Dr. Devlin's] opinion" because he failed "to apply the factors set forth in

---

[3]     Dr. Bolton, one of plaintiff's treating neuropsychologists, examined plaintiff multiple times and reported mild to moderate findings including: "mild but clinically significant ruminative depression" (Tr. 499), "mild to moderate deficits in aspects of memory" (*id*.), that "[o]ne aspect of perceptual-raphomotor speed is mildly impaired" (*id*.), "[u]pper extremity fine coordination is moderately impaired on the right and mildly to moderately impaired on the left" (*id.*), and that "[o]ther areas of functioning are relatively intact."  *Id.*  Dr. Bolton noted that "aspects of reasoning with visual nonverbal material are in the superior range."  *Id.*  Dr. Bolton stated that "[c]urrent findings indicate mild to moderate frontal-temporal dysfunction and are fully consistent with patient's history of head injury."  *Id*.  After follow-up examinations in January 2012, Dr. Bolton reported "mild improvement in one aspect of attention, verbal memory, and upper extremity fine coordination bilaterally" (*id*. at 502), unchanged neuropsychological functioning (*id*.), and that "[m]ild impairment in verbal memory and right upper extremity fine coordination persists."  *Id*. at 502.  Dr. Herman performed a consultative examination on plaintiff on July 14, 2011 and reported that plaintiff's psychiatric problems "in and of themselves…do not appear to be significant enough to interfere with the claimant's ability to function on a daily basis to the extent that vocational functioning would be precluded" (*id*. at 448), and specifically that plaintiff "appear[ed] capable of the following vocational functions: Following and understanding simple tasks, maintaining attention and concentration at a level sufficient for low-level employment, learning new simple tasks, performing complex tasks with which he is familiar, making appropriate decisions, and relating adequately with others." *Id*. at 447.

the regulations to determinate the proper weight to give the opinion…For example, he did not

discuss how frequently [Dr. Devlin] examined [plaintiff], the extent of the doctor's treatment

relationship with [him],[4] or whether other evidence in the record supported [Dr. Devlin's]

opinion.[5] This failure to apply the factors set forth in the regulations constitutes legal error"

(*Miller v. Astrue*, No. 03-civ-2072, 2008 WL 2540750, at *10 (S.D.N.Y. June 23, 2008))

requiring remand. *See Kelly v. Astrue*, No. 12-civ-6477P, 2014 WL 3563391, at *23 (W.D.N.Y.

July 18, 2014) ("In declining to give [treating physician's] opinions controlling weight, the ALJ

failed to acknowledge the treating physician rule and did not reference (much less apply) the [20

C.F.R. § 404.1527(c)] factors" and "[t]he ALJ's failure to do so prevents this Court from

evaluating the ALJ's reasoning for failing to accord [plaintiff's] treating physicians controlling

weight and warrants remand."); *Balodis v. Leavitt*, 704 F.Supp.2d 255, 267 (E.D.N.Y. 2010)

(remanding case for ALJ's failure to apply treating physician rule because, *inter alia,* there was

"no reference in the ALJ's decision to the various factors that must be considered in deciding

what weight to give the opinion of a treating physician, including: (i) the frequency of the

---

[4]     Dr. Devlin began treating plaintiff on a weekly to biweekly basis in December 2011. Tr. 553.

[5]     While the ALJ indicated that he accorded little weight to Dr. Devlin's opinion because it was
inconsistent with, *inter alia*, "the opinions of Drs. Bolton and Herman" (*id.* at 18), he failed to examine
the evidence that supported Dr. Devlin's opinion, including what the ALJ noted earlier in his opinion: that
"substantial evidence of record (mental status examinations, and the opinions of Drs. Bolton and Herman)
show[ed] that the claimant ha[d] moderate limitations in concentration, persistence, or pace, and is limited
to simple tasks." *Id.* Additionally, at follow-up visits in January 2012, Dr. Bolton noted that his
"[f]indings clearly indicate worsening emotional status over the past 10 months" and that "[f]ormal
personality examination indicates an increase in emotional symptomology such that there is now
moderate clinical depression and borderline clinical anxiety" (*id.* at 502), and while Dr. Herman did not
believe that plaintiff's impairments precluded vocational functioning, he did opine that plaintiff "may
have some difficulty dealing with stress and when his stress levels are higher, he may have some
difficulty maintaining a regular schedule" (*id.* at 447-48), which seem to support Dr. Devlin's opinion at
least in regard to plaintiff's moderate mental limitations and his inability to tolerate stress and maintain a
regular work schedule.

examination and the length, nature and extent of the treatment relationship, and (ii) whether the opinion is from a specialist"). On remand, the ALJ may recontact Dr. Devlin for any treatment notes, and shall, with reference to the applicable regulatory factors in 20 C.F.R. §404.1527(c)(2), "state his findings and provide good reasons for assigning less than controlling weight to [Dr. Devlin's] opinion…considering the length, nature, and extent of the treatment relationship, the frequency of examination, the degree to which [Dr. Devlin's] opinion was consistent with the record as a whole, whether [Dr. Devlin] was a specialist, and whether there were any other factors that "support or contradict" [Dr. Devlin's] opinion." *Cabassa v. Astrue*, No. 11-civ-1449, 2012 WL 2202951, at *9 (E.D.N.Y. June 13, 2012); *see also* C.F.R. § 404.1527(c)(2).

2.      Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ conducted an improper credibility analysis. Pl. Mem., at 13-14. In "determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account…but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Because it is the function of the agency, not reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, we will defer to its determinations as long as they are supported by substantial evidence." *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) (summary order) (internal citations omitted). The Second Circuit has "repeatedly held that a

claimant's testimony concerning his pain and suffering is not only probative on the issue of disability, but 'may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence...'" *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Marcus*, 615 F.2d at 27). Thus, where there is a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's] symptoms, such as pain," the ALJ "must then evaluate the intensity and persistence" of the symptoms to determine how the symptoms limit a claimant's capacity for work. 20 C.F.R. § 404.1529. "Further, because a claimant's symptoms, such as pain, 'sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone,' once a claimant has been found to have a pain-producing impairment, the Commissioner may not reject the claimant's statements about his pain solely because objective medical evidence does not substantiate those statements." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 349-50 (E.D.N.Y. 2010) (citing § 404.1529(c)(2)-(3)). In assessing a claimant's allegations concerning the severity of his symptoms, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, [i]f the claimant does suffer from such an impairment...the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3)

precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See Meadors v. Astrue*, 370 Fed. Appx. 179, 183 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).   An ALJ who finds that a claimant is not credible must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Rivera v. Astrue*, No. 10-civ-4324, 2012 WL 3614323, at *14 (E.D.N.Y. Aug. 21, 2012) (quoting *Taub v. Astrue,* No. 10-civ-2526, 2011 WL 6951228, at *8 (E.D.N.Y. Dec. 30, 2011)).

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. 17.  Use of this boilerplate language "suggest[s] a clear violation of [the] rule [requiring an ALJ to assess the credibility of a claimant's statements and only then go on to determine his RFC], [because] the ALJ announced his RFC assessment and then wrote that [the Plaintiff's] statements were not credible to the extent they were inconsistent with that RFC assessment." *Box v. Colvin*, No. 12-civ-1317, 2014 WL 997553, at *21 (E.D.N.Y. Mar. 14, 2014) (citing *Maldonado v. Commissioner of Social Sec.*, No. 12-civ-5297, 2014 WL 537564, at *17 (E.D.N.Y. Feb. 14, 2014) (citing *Otero v. Colvin*, No. 12-civ-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013))).  Courts in this district have found that use of this "improper legal standard" whereby an ALJ "assess[es] a plaintiff's credibility after making an RFC

determination warrants remand, as the SSA 'regulations provide that the ALJ must assess the claimant's credibility *before* evaluating the RFC.'" *Adesina v. Astrue*, No. 12-civ-3184, 2014 WL 5380938, at *12 (E.D.N.Y. Oct. 22, 2014) (citing *Genier*, 606 F.3d at 49 (citing 20 C.F.R. §§ 404.1529(a)-(b), 404.1512(b)(3), and S.S.R. 96–7p)) (emphasis in original); *see also Horn v. Comm'r of Soc. Sec.*, No. 13-civ-1218, 2015 WL 4743933, at *29 (E.D.N.Y. Aug. 10, 2015) ("the ALJ committed legal error" in "finding that Plaintiff's statements regarding the intensity, persistence, and limiting effecting of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" because "use of this language gets things backward since the passage implies that ability to work is determined first and is then used to determine the claimant's credibility") (internal citations omitted); *Yu v. Astrue*, 963 F. Supp. 2d 201, 217 (E.D.N.Y. 2013) (remanding where ALJ employed the same "to the extent...inconsistent" formulation used here).

Here, the ALJ's credibility analysis was flawed by this problematic boilerplate language, and also because the ALJ failed to properly consider all the factors listed in 20 C.F.R. § 404.1529(c)(3) and explain how he balanced those factors. *See Adesina*, 2014 WL 5380938, at *13 ("When conducting a credibility inquiry, the ALJ is required to consider all of the factors listed in 20 C.F.R. § 404.1529(c)(3) and explain how she balanced those factors."). The ALJ stated that he gave consideration "to the claimant's subjective complaints" (Tr. 17) but found that "claimant's admitted activities are inconsistent with his allegations of disability." *Id*. While the ALJ summarized plaintiff's testimony, various medical evidence, and some of plaintiff's activities of daily living, the ALJ did not explain which factors, other than certain of "claimant's admitted activities" (*id.*), he evaluated in determining that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible..." *Id.*; *see also*

*Romanelli v. Astrue*, No. 11-civ-4908, 2013 WL 1232341, at *11-12 (E.D.N.Y. Mar. 26, 2013)

(remanding for a proper credibility analysis after finding that "while the ALJ recited various

medical evidence, including Plaintiff's limited daily activities and Plaintiff's description of

dizziness, headaches, and coughing…he provided no analysis as to how these items – or any

other 20 C.F.R. § 404.1529(c)(3) factors – led to his conclusory statement that Plaintiff's

testimony concerning the intensity and limiting effects of her condition was not credible.");

*Jones v. Astrue*, 09-civ-557, 2011 WL 3423771, at *23 (S.D.N.Y. July 15, 2011), *report and*

*recommendation adopted sub nom. Jones v. Atrue*, No. 09-civ-5577, 2012 WL 4473258

(S.D.N.Y. Sept. 28, 2012) (remand warranted where ALJ "provided a summary of [claimant's]

testimony and therapy records, [but] did not explain how the record – or even which parts of the

record – failed to support [claimant's] testimony").

      In making his determination about plaintiff's credibility, it is not clear that the ALJ took

into account the factors listed in 20 C.F.R. § 404.1529(c)(3) other than plaintiff's daily activities

(Tr. 17-18), as the regulations and caselaw require. *See Meadors*, 370 F. App'x at 185, n.2 (an

ALJ must "consider each of the factors set forth in § 404.1529(c)(3)" and may not "simply

selectively choose evidence in the record that supports his conclusion" or "mis-characterize a

claimant's testimony or afford inordinate weight to a single factor, because a claimant need not

be an invalid to be found disabled under the Social Security Act") (internal alterations,

quotations, and citations omitted); *see also Valet v. Astrue*, No. 10-civ-3282, 2012 WL 194970,

at *22 (E.D.N.Y. Jan. 23, 2012) ("Because ALJ Strauss failed to address all of the factors set

forth in the Regulations [for evaluating credibility], remand is appropriate."). The record

included plaintiff's testimony that he became dizzy quite often, had headaches all the time, had

ringing in his ears, that his hands shook, and that his back, hands and feet hurt, that he

experienced stiffness in the morning, and that his medication made him groggy in the mornings. *Id.* at 46-47. Plaintiff also reported "constant" pain, that he could not stay focused, that he was tired and weak, experienced vertigo and headaches (*id.* at 341) and that he could not stand in place or walk for longer than twenty (20) minutes before needing to shift (*id.* at 51), that he could not sit for more than thirty (30) minutes at one time or lift more than ten (10) pounds. *Id.* at 63. Plaintiff also reported becoming overwhelmed with stress and having difficulty remembering things, and that stress and his activities of daily living caused radiating pain in his feet, hands, back, neck, face, and head that was stiff, pounding, stabbing, dull, and achy and could last from a brief period up to the whole day. *Id.* at 348-49.

While the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p" (*id.* at 15), "he did not analyze those factors or incorporate them into his analysis," did not "indicate how he balanced the various factors" (*Simone v. Astrue*, No. 08-civ-4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept. 16, 2009) (remanding where the ALJ "did not offer any analysis of the factors prescribed for evaluating subjective pain" and "did not identify what facts he found to be significant, indicate how he balanced the various factors, or specify which of plaintiff's alleged symptoms he found to be not credible") and failed to properly consider the factors in 20 C.F.R. § 404.1529(c)(3) other than activities of daily living "with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435-36 (S.D.N.Y. 2010); *see also Horn*, 2015 WL 4743933, at *30 ("the ALJ's conclusory statement reflects that she considered only Plaintiff's

collection of unemployment benefits, attendance at community college, and her own RFC assessment in appraising Plaintiff's credibility, rather than all of the available evidence as stipulated by the SSA regulations.") (internal quotations and citations omitted). The ALJ's "failure to apply the proper legal standard in weighing Plaintiff's credibility is, alone, a basis for remand." *Adesina*, 2014 WL 5380938, at *12; *see also Horn*, 2015 WL 4743933, at *31 ("the ALJ's failure to comply with SSA regulations and fully articulate the rationale underlying her credibility determination constitutes legal error that necessitates remand."); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) ("The ALJ's lack of specificity and failure to meet Social Security Administration requirements for evaluating the credibility of Plaintiff's subjective complaints require remand."); *Pereyra v. Astrue*, No. 10-civ-5873, 2012 WL 3746200, at *16 (E.D.N.Y. Aug. 28, 2012) ("the ALJ failed to make a proper credibility determination in discounting Plaintiff's testimony, and the matter must be remanded for this independent reason"); *Grosse v. Comm'r of Soc. Sec.*, No. 08-civ-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (remanding where ALJ "committed legal error" because the ALJ "wholly failed to consider factors (2) through (7)" in its credibility analysis). On remand, the ALJ should assess claimant's credibility, in light of the factors in 20 C.F.R. § 404.1529(c)(3) and all the information in his file before determining plaintiff's residual functional capacity. To the extent the ALJ on remand determines that any of claimant's statements are inconsistent with medical evidence in the record, the ALJ should specify the statements and the evidence in the record, and explain why he chooses to discredit the statements with reference to the applicable regulatory factors. *See* 20 C.F.R. § 404.1529(c)(3).

3.      ALJ's Step Five Analysis

Since the ALJ erred in applying the treating physician's rule and in assessing plaintiff's credibility, the ALJ's RFC determination and plaintiff's remaining contentions regarding the ALJ's step five (5) analysis cannot be given meaningful review. *See Meadors*, 370 F. App'x at 185-86 ("Because we conclude that the ALJ erred in assessing Appellant's credibility, thereby depriving us of the ability to subject his RFC determination to meaningful review, we do not reach the question of whether the ALJ was required to consult a vocational expert at Step 5 of the sequential analysis."); *Spear v. Astrue*, No. 13-civ-6017, 2014 WL 4924015, at *20 (W.D.N.Y. Sept. 30, 2014) ("Because I conclude that the ALJ's credibility assessment was the result of legal error, I am unable to subject the ALJ's physical RFC analysis to meaningful review, and I do not reach [plaintiff's] remaining contentions regarding the ALJ's physical RFC assessment or the vocational expert's testimony at step five."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 85 n.79 (S.D.N.Y. 2012) ("Because I find that remand is proper on the basis of the ALJ's failure to properly develop the record and to properly apply the treating physician rule, I do not reach plaintiff's arguments with respect to [step four and step five of the analysis]").

III.      CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED and Plaintiff's Motion is GRANTED IN PART insofar this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED**.


                                        s/ Sandra J. Feuerstein
                                        Sandra J. Feuerstein
                                        United States District Judge


Dated: September 11, 2015
       Central Islip, New York